UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MELANIE GOLDSMITH,**

    **Plaintiff,**

v.                                                                            **Case No. 8:22-cv-1686-AAS**

**KILOLO KIJAKAZI,**
**Acting Commissioner,**
**Social Security Administration,**

    **Defendant.**
_____/

## ORDER

Melanie Goldsmith requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the parties' memoranda, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Ms. Goldsmith applied for DIB and alleged disability beginning on March 26, 2019. (Tr. 222–23). Disability examiners denied Ms. Goldsmith's application initially and upon reconsideration. (Tr. 131, 141). At Ms.

Goldsmith's request, the ALJ held a hearing on November 9, 2021. (Tr. 57–89, 154). The ALJ issued an unfavorable decision to Ms. Goldsmith on December 17, 2021. (Tr. 30–49).

On June 29, 2022, the Appeals Council denied Ms. Goldsmith's request for review, making the ALJ's decision final. (Tr. 1–6). Ms. Goldsmith requests judicial review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Ms. Goldsmith was thirty-three years old on her alleged onset date of March 26, 2019. (Tr. 90, 104, 222). Ms. Goldsmith has past relevant work as an administrative clerk. (Tr. 47, 100, 123).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe

---

[1] If the ALJ determines that the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

2

impairment and is not disabled. 20 C.F.R. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 404.1520(e). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

The ALJ determined Ms. Goldsmith had not engaged in substantial gainful activity since March 26, 2019, her alleged onset date. (Tr. 35). The ALJ found Ms. Goldsmith had these severe impairments: Crohn's disease; partial thickness rotator cuff tear, impingement syndrome, bicipital tendinitis, bursitis, and arthritis of the AC joint in the bilateral shoulders status-post arthroscopic repair; multilevel cervical disc bulging with mild stenosis; spondylitis arthritis; and morbid obesity status-post laparoscopic gastric sleeve

---

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. § 404.1545(a)(1).

placement. (Tr. 35). But the ALJ found none of Ms. Goldsmith's impairments or any combination of her impairments met or medically equaled the severity of an impairment in the Listings. (Tr. 38).

The ALJ then found Ms. Goldsmith had the RFC to perform light work[4] with the following limitations:

> [Ms. Goldsmith] can stand and/or walk 4 hours and sit 6 hours in an 8-hour workday with normal and customary breaks. [Ms. Goldsmith] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Ms. Goldsmith] can frequently reach with the bilateral upper extremities, but only occasionally reach overhead bilaterally. [Ms. Goldsmith] must avoid even moderate exposure to cold and heat, wetness, and humidity. She must avoid all exposure industrial hazards such as unprotected heights. [Ms. Goldsmith] requires a work environment with ready access to bathroom facilities such as work in an office as opposed to door-to-door sales. Finally, [Ms. Goldsmith] can work in an environment that does not require fast or production rate paced work.

(Tr. 39–40).

Based on these findings and the testimony of a vocational expert (VE),

---

[4] The Social Security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

4

the ALJ determined Ms. Goldsmith could perform her past relevant work as an administrative clerk. (Tr. 47–48). As a result, the ALJ found Ms. Goldsmith not disabled from March 26, 2019, through the date of the ALJ's decision. (Tr. 48).

### III. ANALYSIS

#### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment

5

for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

**B. Issue on Appeal**

Ms. Goldsmith's sole issue on appeal is whether the ALJ erred by failing to consider the side effects of her Crohn's disease medication, Humira, when evaluating her subjective complaints. (Doc. 17, pp. 6–8). Ms. Goldsmith points to her testimony that Humira caused extreme fatigue and flu-like symptoms and function reports that she similarly complained her medication caused extreme fatigue, joint pain, stomach issues, and headaches. (*Id.*).

To establish a disability based on subjective symptoms, a claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If this step is satisfied, the ALJ then "evaluate[s] the intensity and persistence of an individual's

6

symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Social Security Ruling (SSR)[5] 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c). In evaluating intensity and persistence, the ALJ considers "all of the available evidence from [a claimant's] medical sources and nonmedical sources[,]" including objective medical evidence, daily activities, precipitating and aggravating factors, medications and treatments available to alleviate symptoms, the type, dosage, effectiveness, and side effects of medications, and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–7. If the ALJ elects not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). In the end, subjective complaint evaluations come within the province of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Id.* (citing *Foote*, 67 F.3d at 1562).

---

[5] SSRs are agency rulings published under the Commissioner's authority and are binding on all components of the SSA. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). They are not binding on a court. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

Here, the ALJ recognized his obligation to consider "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (Tr. 40). "After careful consideration of the evidence," the ALJ found that although Ms. Goldsmith's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (Tr. 41). This demonstrates that the ALJ appropriately applied the Eleventh Circuit pain standard when considering Ms. Goldsmith's subjective complaints, which include her complaints regarding medication side effects. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard."); *see also Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010)[6] ("The ALJ found that although Walker's medically determinable impairments could reasonably be expected to produce the symptoms she alleged, Walker's statements concerning the intensity, persistence and limiting effects of her symptoms were 'not entirely credible,' a

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." *See* 11th Cir. R. 36-2.

finding that encompassed her testimony about her side effects."); *Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding that while the ALJ did not specifically mention the claimant's alleged medication side effects, she committed no error because she acknowledged her obligation under the regulations to consider all of the claimant's symptoms and because she discredited the claimant's testimony).

Furthermore, the ALJ acknowledged and discussed Ms. Goldsmith's subjective complaints, including those of gastrointestinal symptoms, diffuse joint pain and sensitivity in the neck and bilateral upper and lower extremities, and that she was "constantly fatigued." (Tr. 40–41). However, the ALJ noted that "treatment notes generally showed [Ms. Goldsmith] appeared alert, fully oriented, cooperative, and in no acute distress." (*See* Tr. 42, 386, 496, 500, 504, 606–07, 632, 644, 688, 691, 699, 711, 714, 732, 779, 803, 807, 812, 826, 830, 841, 849, 864, 907, 911, 930, 934, 947, 973, 980, 987, 989, 993, 1016, 1025, 1027, 1031, 1034, 1037, 1053, 1138, 1144, 1185, 1196). He also noted that Ms. Goldsmith "routinely denied . . . fatigue, lightheadedness, cough, dysphagia, and any acute numbness, tingling, or weakness." (*See* Tr. 42, 631, 722, 725, 728–29, 779, 792, 797, 806–07, 811, 815, 819, 822, 829, 891, 896, 901, 910, 915, 920, 923, 926, 933, 986, 992–93, 1025, 1028–29, 1030, 1034, 1037, 1136–37, 1144–45). The ALJ concluded:

> Overall, physical examinations demonstrated no significant musculoskeletal abnormalities, and there was no evidence of focal motor, sensory, or neurologic deficits. The record does not contain any positive signs of chronic pain such as muscle atrophy, muscle spasms, valid neurologic deficits such as reflex, motor, or sensory loss, valid positive straight leg raising tests, bowel or bladder dysfunction of neurologic origin, or inflammatory signs such as heat, redness, swelling, or synovitis. [Ms. Goldsmith] reported beneficial pain relief with medications and treatment notes demonstrate a relatively good control and relief of pain symptoms [sic] steroid injections, as well as improvements with strength and range of motion through physical therapy, indicating [Ms. Goldsmith's] conservative treatment regimen was relatively effective in controlling her symptomatology.

(Tr. 42–43).

In addition to the medical evidence, the ALJ considered Ms. Goldsmith's activities of daily living, finding that they "[we]re not consistent with disabling symptoms and limitations." (Tr. 44). The ALJ noted that Ms. Goldsmith "[was] able to care for herself and her personal needs without assistance[,] . . . take care of her two children, prepare meals, and complete household chores such as laundry, washing dishes, light cleaning, and caring for her cat and dogs." (Tr. 44, 283, 316–17, 323–24, 607; *see also* Tr. 437 (noting "[n]o difficulties with activities of daily living")). She was also able to "go out independently, drive an automobile, go shopping in stores, manage finances, attend religious meetings, homeschool her children, spend time with friends and family, use a computer, read, follow instructions, watch television, and work part-time as a bookkeeper." (Tr. 44, 67, 79, 84, 284–86, 316–19, 323–26, 607).

10

The ALJ also considered and found "somewhat persuasive" the opinions of the State agency medical consultants who reviewed the evidence and opined that Ms. Goldsmith was "capable of performing a range of light work with frequent postural and environmental limitations and only occasional overhead reaching with the right upper extremity." (Tr. 45–46, 96–99, 118–23). The ALJ found the assessments "consistent with the objective and physical examination findings, documenting a normal, unassisted gait and station, normal motor and fine manipulation skills, symmetric reflexes, intact sensation, full muscle strength and tone without atrophy, and full range of motion throughout without instability, laxity, or crepitus." (Tr. 45–46). However, the ALJ found additional limitations were appropriate based on Ms. Goldsmith's testimony and additional evidence subsequently obtained. (Tr. 46).

Finally, as the Commissioner points out, Ms. Goldsmith "failed to prove that she had any medication side effects that limited her ability to work." (Doc. 18, p. 1); *see Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."); *Walker*, 404 F. App'x at 366 ("[T]he claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work.").

Other than her testimony and function reports, Ms. Goldsmith cites to only one November 5, 2019 treatment note when she complained to her medical provider, Lisa Luckey, D.O., of "feeling a little funny for a couple of days after her injection." (Doc. 17, p. 7 (citing Tr. 428)). However, despite this complaint, Ms. Goldsmith denied fatigue, headaches, or weakness, and on examination had no abdominal tenderness, guarding, or rigidity. (Tr. 429–30). And on March 24, 2020, Dr. Luckey indicated that Ms. Goldsmith "[was] doing well[,] . . . ha[d] no gi complaints at this time[,] [and] her humira level ha[d] gone up to therapeutic levels since starting on weekly shots." (Tr. 710, 1018). Dr. Luckey noted that Ms. Goldsmith was to "continue humira weekly." (Tr. 712, 1019). Similarly, on June 16, 2020, Dr. Luckey indicated Ms. Goldsmith "[was] doing well on weekly Humira[,]" and that "[s]he ha[d] been on the weekly Humira for 4-6 months." (Tr. 713, 1015).

And while Ms. Goldsmith points to other instances when she complained of fatigue, joint pain, and sleep disturbances (*see* Doc. 17, p. 7 (citing Tr. 431, 437, 946)), there is no indication from her or her medical providers that these symptoms were attributed to Ms. Goldsmith's medication.

Thus, Ms. Goldsmith failed to introduce evidence that her medication side effects made her unable to work. *See Walker*, 404 F. App'x at 367 ("Apart from her own subjective statements, there is no evidence in the record that any of [the claimant's] other symptoms actually were caused by her medications.");

*Paschall v. Comm'r of Soc. Sec.*, No. 8:16-cv-3312-T-JSS, 2018 WL 460202, at *6 (M.D. Fla. Jan. 18, 2018) (finding that the ALJ did not err in his consideration of the claimant's medication side effects where "apart from [the claimant's] subjective statements regarding his side effects, made at the hearing and as part of his application for benefits, [the claimant] present[ed] no evidence regarding his medications' side effects"); *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006) ("the ALJ did not err in discrediting [the claimant's] testimony regarding side-effects from her medications because the record includes no evidence that [the claimant] consistently complained to her doctors of any side-effects"); *Robinson*, 649 F. App'x at 802 (finding that the ALJ did not err in failing to mention a claimant's alleged medication side effects where the claimant "testified to medication side effects and reported medication side effects once[,]" but "did not consistently complain of them to doctors"); *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 238 (11th Cir. 2011) ("Substantial evidence supports the ALJ's decision to discredit [the claimant's] complaints as they related to medication side effects: none of [the claimant's] doctors reported any side effects from his medications, and he did not complain to them of any side effects.").

In sum, the ALJ properly applied the standard set forth in the applicable regulations for evaluating subjective complaints, considered Ms. Goldsmith's subjective complaints, and articulated specific reasons supported by

13

substantial evidence for discounting them. Moreover, Ms. Goldsmith failed to introduce sufficient evidence that medication side effects limited her ability to work. On this record, the ALJ did not err in evaluating Ms. Goldsmith's subjective complaints regarding her medication side effects.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on June 26, 2023.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge